UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INNOVATIVE SPORTS MANAGEMENT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>LADY Z. LIZCANO, et al.,<br><br>Defendants. | Case No. 25-cv-05056-NW<br><br>**ORDER DENYING MOTION FOR DEFAULT JUDGMENT** |

Plaintiff Innovative Sports Management ("Innovative") owns the domestic commercial exhibition rights to broadcast certain soccer games nationwide.  Innovative sued Defendants Lady Lizcano, Manuel Trujilio, and MLSJ, Inc. for displaying one of these soccer matches inside their restaurant without a license.  Defendants have failed to respond to any of the allegations made by Innovative in this case, and Innovative now moves for default judgment.  For the following reasons, the Court denies default judgment against Defendants.

## I.    BACKGROUND

For the purposes of default judgment, the factual allegations in a complaint are accepted as true except for those related to damages.  *See Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

Innovative purchased exclusive commercial exhibition rights to license certain soccer matches to business establishments, like bars and restaurants, across the United States.  Compl., ECF No. 1.  Innovative owns the licensing rights to the June 15, 2024 soccer match between Colombia and Bolivia.  *Id.*  On that date, an agent of Innovative visited the Hacienda Parilla Bar in San José, California.  ECF No. 24-1.  The agent observed the Hacienda Parilla Bar displaying the match on their televisions for its patrons to view.  *Id.*  The establishment was approximately forty

percent full at the time. *Id.* Innovative does not allege that the Hacienda Parilla Bar advertised the event in advance nor charged a cover fee for patrons to enter. ECF No. 1.

On its California liquor license, the Hacienda Parilla Bar lists Defendant MLSJ, Inc. as its primary owner. ECF No. 1. The license also lists Defendant Lady Z. Lizcano as the President, CEO, CFO, stockholder, and director of MLSJ, and Defendant Manuel Andrade Trujilio as the secretary, stockholder, and director of MLSJ. *Id.*

Innovative filed this suit on June 13, 2025, seeking damages under 47 U.S.C. § 605 or alternatively under 47 U.S.C. § 553, damages for conversion under California state law, and damages under California Business and Professions Code § 17200, *et seq*. ECF No. 1. On June 17, 2025, the Clerk of the Court issued a summons as to Defendants at 1820 Alum Rock Ave., San Jose, CA 95116. ECF No. 8. According to the proof of service, on August 24, 2025, Innovative's process server served the Defendants by substitute service upon Maria Trujillo, the competent member at Defendants' "home" at 18535 Serra Ct, Morgan Hill, CA 95037-2963. ECF Nos. 14-16. On August 29, 2025, Innovative mailed a copy of the complaint and summons to the same address by first class, postage prepaid mail. ECF Nos. 14-16.

To date, Defendants have neither responded to Innovative's complaint nor made any appearance in federal court in relation to this lawsuit. On October 1, 2025, the Clerk of the Court entered default against Lizcano, Trujilio, and MLSJ. ECF No. 22. On December 10, 2025, Innovative moved for default judgment against all Defendants, seeking relief on two out of the four causes of action: statutory damages under 47 U.S.C. § 605 and the California conversion claim. ECF No. 24.

The Court held a hearing on the motion on February 24, 2026. ECF No. 41. Defendant Lizcano was present in the courtroom without the assistance of an interpreter. *Id.* The Court continued the hearing and held a second hearing on April 14, 2026. ECF Nos. 42-43. Again, while Defendants were physically present in the courtroom for the second hearing, they did not make an appearance in the case or participate in the hearing. ECF No. 43.

## II.   LEGAL STANDARD

Federal Rule 55(b)(2) allows a party "to apply to the court for a default judgment." The

United States District Court
Northern District of California

2

decision to enter a default judgment is entirely within the district court's discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Courts consider the following factors in determining whether default judgment is proper:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Where a plaintiff seeks default against a non-appearing defendant, the court "should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The Court must also assess the adequacy of service of process on the non-appearing party. *See, e.g., Innovative Sports Management, Inc. v. Nunez*, No. 22-cv-07136-JSC, 2023 WL 4551069, at *2 (N.D. Cal. July 13, 2023).

## III.   ANALYSIS

### A.   Jurisdiction and Service of Process

The Court has subject matter jurisdiction over this lawsuit because Innovative's claims arise under two federal statutes. 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Innovative's California conversion claim because that claim arises from the same facts that give rise to the Court's original jurisdiction. 28 U.S.C. § 1367. The Court also has personal jurisdiction over Defendants because MLSJ, Inc. owns the Hacienda Parilla bar, the California-based establishment at which the display of the match occurred. Defendants Lizcano and Trujilio are subject to the Court's personal jurisdiction by way of their roles as directors and board members of MLSJ. Venue lies properly within this district pursuant to 28 U.S.C. § 1391.

Federal Rule 4(e)(1) allows a plaintiff to serve process on a defendant by "following [the] . . . law for serving a summons" of the state in which the federal court sits. California authorizes substitute service when the "summons and complaint cannot with reasonable diligence be personally delivered to the person to be served[.]" Cal. Code Civ. P. § 415.20. Ordinarily, two or three attempts at personal service at a proper place should fully satisfy the requirement of

*United States District Court*
*Northern District of California*

reasonable diligence and allow substituted service to be made. *Hearn v. Howard*, 177 Cal. App. 4th 1193, 1202 (2009). Courts in California "permit service to be completed upon a good faith attempt at physical service on a . . . person whose relationship with the person to be served makes it more likely than not that they will deliver process to the named party." *Id.*, at 1202-03. To satisfy substituted service, a plaintiff must also send the defendant a copy of the documents via first-class mail at the same place where the process server left the documents. Cal. Code. Civ. P. § 415.20(b). Service is deemed complete ten days thereafter. *Id*.

Here, while the summons listed Defendants' address as 1820 Alum Rock Ave., San Jose, CA 95116, Innovative's process server attempted personal service at Defendants' "home" at 18535 Serra Ct, Morgan Hill, CA 95037-2963. ECF Nos. 8, 14-16. The process server unsuccessfully attempted personal service at this location on six separate occasions. *Id.* This constitutes sufficient diligence to support substituted service. *See Hearn*, 177 Cal. App. 4th at 1202. On the seventh attempt, August 24, 2025, the process server effected substituted service by leaving the documents with Maria Trujillo, a competent member of the household. ECF Nos. 14-16. On August 29, 2025, the process server mailed a copy of the documents to the same address via first-class, postage prepaid mail. *Id*. The filing of a proof of service by Innovative's registered process server creates a rebuttable presumption that the service was proper. *See Floveyor Internat., Ltd. v. Superior Ct.*, 59 Cal. App. 4th 789, 795 (1997) (filing of a proof of service creates a rebuttable presumption that the service was proper when the proof of service complies with the applicable statutory requirements). Thus, service was deemed effective on September 8, 2025.

**B.    *Eitel* Factors**

The *Eitel* factors do not support entering default judgment against Defendants.

**a.    Factor 1: Possibility of Prejudice to the Plaintiff**

The first *Eitel* factor supports default judgment because without judgment, Innovative will be left without a remedy. *See Innovative Sports Mgmt., Inc. v. Gutierrez*, No. 22-CV-05793-BLF, 2023 WL 4157627, at *2 (N.D. Cal. June 23, 2023) (citing *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

**b.      Factors 2 and 3: Merits of Plaintiff's Substantive Claims and Sufficiency of the Complaint**

Innovative's complaint alleges (1) violation of 47 U.S.C. § 605; (2) violation of 47 U.S.C. § 553; (3) conversion; and (4) violation of California Business and Professions Code 17200, *et seq*. ECF No. 1. However, Innovative moved for default judgment only on (1) violation of 47 U.S.C. § 605; and (2) conversion. ECF No. 24. Where Section 553 prohibits unlawful interception of a cable signal, Section 605 prohibits unlawful interception of a satellite broadcast. *J & J Sports Prods., Inc. v. Manzano*, No. c-08-01872-RMW, 2008 WL 4542962, at *2 (N.D. Cal. Sept. 29, 2008).

The Court concludes that the second and third *Eitel* factors weigh against awarding default judgment under Section 605. The complaint's sole allegation purportedly giving rise to liability under Section 605 is that the soccer match "originated via satellite uplink and was subsequently retransmitted to cable systems and satellite companies via satellite signal to Plaintiff's lawful sub-licensees." ECF No. 1. Innovative argues that this claim meets the threshold finding required for liability under Section 605. But that is an incorrect statement of the law. To prevail under Section 605, the complaint needs to allege that the defendants "intercepted a satellite transmission[] as opposed to a cable signal[.]" *G & G Closed Circuit Events, LLC, v. Macias*, No. 20-cv-02916-BLF, 2021 WL 2037955, at *3 (N.D. Cal. May 21, 2021). The focus is on the defendants' manner of interception, not the plaintiff's manner of transmission. The complaint states that the match was transmitted via both cable and satellite, meaning that the defendants might have intercepted either a cable or satellite display of the soccer match. "Indeed, the fact that violations of both 605 and 553 were alleged in the Complaint indicates that Plaintiff is unable to specify the type of transmission." *See J & J Sports Prods., Inc. v. Coria*, No. c-12-05779-JSW, 2015 WL 1089044, at *4 (N.D. Cal. Feb. 27, 2015) (cleaned up).

Innovative has failed to provide any clear evidence as to how the soccer match was intercepted. In the absence of such evidence, courts consistently find that a violation of Section 553 is more likely than a violation of Section 605 because it is more probable that the defendant used a cable box to display a program given the relative ease in hiding a cable box as compared to a satellite dish. *See J & J Sports Prods., Inc. v. Guzman*, No. c-08-05469, 2009 WL 1034218, at

United States District Court
Northern District of California

*2 (N.D. Cal. Apr. 16, 2009) ("[G]iven that a cable box is more easily hidden, the court finds that defendants violated section 553, but not section 605."); *Ro*, 2010 WL 668065, at *3 ("Without better homework by the investigator, the Court will not rule out the presence of a cable box."). Similarly, Innovative has done nothing to substantiate its claim of unlawful broadcast aside from sending an investigator to Hacienda Parilla on the date of the soccer game. But that investigator only attested to his presence at Hacienda Parilla Bar during the display of the match and said nothing about investigating the means of transmission. *See J & J Sports Prods., Inc. v. Segura*, No. c-12-01702-JSW, 2014 WL 1618577 (N.D. Cal. Apr. 21, 2014) ("[I]f plaintiff wanted to prove this, they could have filed a third party subpoena or requested an order for inspection . . . a defendant's default does not eliminate the opportunity to take third party discovery.") (citations omitted). Given the lack of factual allegations supporting liability under Section 605, the Court finds it inappropriate to enter default judgment under that provision.[1]

Additionally, Innovative has not adequately alleged its conversion claim. In the complaint, Innovative does not identify the legal basis for its claim. Instead, Innovative simply states that Defendants "tortuously obtained possession of the *Program* and wrongfully converted same for his own use and benefit." Compl. ¶ 42. Conclusory allegations, like those alleged here, are insufficient to state a claim. *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (default judgment reversed on appeal where complaint failed to allege required elements of a claim). Because Innovative has not adequately pled the elements nor identified the law upon which it relies, the Court finds that Innovative has not established a basis for default judgment for its conversion claim.

### c.    Remaining Factors

Because Innovative has not shown that the merits of its substantive claims and sufficiency

---

[1] At the hearing, Plaintiff's counsel provided information about other methods of accessing Plaintiff's programming aside from intercepting cable or satellite transmissions. Plaintiff's counsel hypothesized that business owners buy an individual or single license to watch a program but then stream and display the program on a commercial scale. Plaintiff's counsel explained that it would be challenging to prove that a defendant engaged in this method of inappropriately accessing and displaying programming. The Court appreciated this context. However, Plaintiff has not included this information or theory in its Complaint and cannot proceed with a claim on that basis.

of the complaint support the entry of default judgment – two key *Eitel* factors – the Court does not reach the remaining factors. *See Sanrio, Inc. v. Jay Yoon,* No. 5:10–cv–05930 EJD, 2012 WL 610451, *3 (N.D. Cal. Feb. 24, 2012) (noting that of the *Eitel* factors, the "most important are the second and third factors").

The Court DENIES Innovative's motion for default judgment.  The Clerk of Court shall enter judgment in favor of Defendants, and shall close the case.

**IT IS SO ORDERED.**

Dated: April 29, 2026

_____

Noël Wise
United States District Judge